IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ARNOLD JEFFREY SAYLES,**

      **Plaintiff,**

v.                                                                                     **Civil Action No. 5:13cv1**
                                                                                          **(Judge Stamp)**

**MR. TERRY O'BRIEN, Warden,**
**MR. T. BAYLESS, Correctional Officer,**
**Mr. R. SHANNON, Correctional Officer,**

      **Defendants**

## REPORT AND RECOMMENDATION

*I. INTRODUCTION*

On January 4, 2013, the *pro se* plaintiff, a federal inmate, initiated this case by filing a civil rights complaint. On that same date, the plaintiff was sent a Notice of Deficient Pleading. On February 5, 2013, the plaintiff was sent a Show Cause Order because he had failed to comply with the Notice of Deficient Pleading. On February 9, 2013, the plaintiff paid the $350 filing fee and submitted his complaint on this Court's approved form.[1] In his complaint, the plaintiff alleges that he lost a portion of his finger when a manhole cover fell on it while he was working with improper equipment in inappropriate weather conditions. For relief he seeks "liability for damages," injunctive relief and punitive damages. (Doc. 10, p. 9).

On February 21, 2013, the Court performed a preliminary review of the case and decided that

---

[1] The undersigned notes that the plaintiff's complaint is filed on a 1983 form. However, because the defendants are federal employees, his complaint actually arises under Bivens.

1

summary dismissal was not appropriate. Because the plaintiff paid the $350 filing fee and was not granted leave to proceed *in forma pauperis*, an Order was entered directing the Clerk to issue 60day summonses for the named defendants, and the plaintiff was advised that he must effect service of process upon those parties and timely provide the Court with certification of service by filing documents which reflected proper, completed service upon each party. On March 4, 2013, the plaintiff filed the proof of service, indicating that each defendant had been served through the prison's internal mailing system.(Doc.16).

In lieu of an answer, the Defendants filed a Motion to Dismiss, wherein they contend that the complaint should be dismissed for the following reasons: (1) insufficient service of process and (2) failure to exhaust administrative remedies. On July 2, 2013, a Roseboro Notice was issued. On July 15, 2013, the plaintiff filed a Response in Opposition to the Motion to Dismiss.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id*. In other words, the complaint must contain allegations that are "plausible" on their face, rather

2

than merely "conceivable." *Id*. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III. DISCUSSION

### A. Service of Process

The defendants accurately note that proper service of process must be executed before a federal court can invoke power over a defendant. To establish proper service of process, a plaintiff must follow the requirements provided by Rule 4 of the Federal Rules of Civil Procedure. In addition, in an action against an officer or agency of the United States, where defendants have been named individually for "an act of omission occurring in connection with duties performed on the United States' behalf," Rule 4(i)(3) requires that the plaintiff serve both the United States pursuant to 4(i)(1) as well as the officer or employee individually under Rule 4(e).

Rule 4(e) states that service upon an individual may be effected either: (1) in accordance with the law of the state in which the district court is located, or in which service is made or (2) by delivering a copy of the summons and of the complaint to the individual personally[2] or by leaving copies thereof at the individual's dwelling house or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process. Service upon the United States is made by delivering a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C.

Here, it is clear that the plaintiff did not serve the individual defendants properly. Although his return indicates that service was perfected through the prison mail system, the plaintiff

---

[2] Rule 4(c)(2) specifies that "[a]ny person who is at least 18 years old and **not a party** may serve a summons and complaint." (Emphasis added).

acknowledges that he gave the documents to his counselor, Mr. Eric Griffith, who indicated he personally would serve the documents "up top." (Doc. 25, p. 5). First, even if the plaintiff had used the prison mail system, the same would not have produced valid service under Rule 4. Second, there is no indication that there is any individual at a BOP facility who is "an agent authorized by appointment or by law to receive service of process." (Rule 4(e)(2)(C). Finally, if Mr. Griffith actually "served" the summons and complaint on those defendants still employed at USP Hazelton, the return does not reflect the same.

To the extent that the plaintiff failed to serve United States, the undersigned notes that the Order regarding preliminary review and service of process failed to direct the Clerk of Court to provide the plaintiff with a summons for the United States Attorney or the Attorney General. Furthermore, although Rule 4M requires service within 120 days after the complaint is filed, any dismissal would be without prejudice. Moreover, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate time. Given that the plaintiff is *pro se*, the undersigned finds that it would be improper to enter a dismissal order for failure to obtain service. Instead, it would appear more appropriate to afford the plaintiff an additional, defined period of time within which to obtain service.

### B. Exhaustion under § 1997e

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. *Id.* at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his administrative remedies until

---

[3] *Id.*

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or

he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In the instant case, the defendants argue that although the plaintiff has filed submissions at the Regional and Central Office levels, he failed to first file and receive a response at the institutional level as required by 28 U.S.C. § 542. Therefore, his subsequent filings were rejected by the Bureau of Prisons because they were deemed to have been filed at the wrong level and failed to contain responses from the Warden and the Regional Office, respectively. Accordingly, the defendants argue that this matter must be dismissed because the plaintiff failed to exhaust his administrative remedies.

In his response to the defendants' Motion to Dismiss, the plaintiff indicates that he initiated the administrative process on June 19, 2012, when he filed his BP-8 or "copout" in which he stated that a serious accident had occurred and asked for clarification as to what the BOP proposed to do about it. The plaintiff further alleges that he did not receive a response, and therefore, on July 31, 2012, he sent a BP-9 through the internal prison mailing system. He further alleges it was sent a second time, and he received no response to either. Accordingly, on September 12, 2012, he filed a BP-10, in which he explained that the warden never responded to his BP-9 within the required 20 days. The BP-10 was stamped received on October 4, 2012. After waiting the required 30 days, the plaintiff alleges that he filed his BP-11, and included both his BP-9 and BP-10, neither of which had responses attached because none had been received. The plaintiff maintains that he never received

---

CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

6

a response to his BP-11, and therefore, filed his instant complaint.

Section 1997e(a) provides that prisoners are required to exhaust "such administrative remedies as are available," and courts have consistently held that "administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Further, courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Allevaleda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'") (citations omitted); *Brown v. Croak*, 312 F.3d 109, 111-12 (3d Cir. 2002) (holding that administrative remedies were unavailable where the prison officials erroneously told the prisoner that he must wait until the investigation was complete before filing a grievance).

Here, the defendants chose not to address either the attachments to his form complaint or his reply to the plaintiff's response, and therefore, have not addressed his claim that he did, in fact, file a BP-9 to which he received no response. (Doc. 10-1, p.4). Nor, have they addressed the fact that the the plaintiff appears to have notified the BOP that he had not received a response from the warden.(Doc. 10-1, p.10). Nor, have the defendants filed any information from the administrative remedy clerk at USP Hazelton which might tend to disprove the plaintiff's contention that he sent his BP-9 twice and did not receive a response. In sum, there is a genuine issue of material fact as to whether or not the plaintiff properly exhausted his administrative remedies, and if not, whether he was prevented from doing so by the actions or inactions of BOP officials. Accordingly, it would be inappropriate to dismiss the plaintiff's claims for failure to exhaust based on the current record.

## IV. CONCLUSION & RECOMMENDATION

For the reasons set forth, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss (Doc. 20) be **DENIED**. It is further **RECOMMENDED** that the Clerk of Court be directed to issue a 60-day summons for each of the defendants as well as the U.S. Attorney and the Attorney General, and the plaintiff be afforded an additional 30 days after receipt of the same to perfect service as required by Rule 4 of the Federal Rules of Civil Procedure.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this report and recommendation, via certified mail return receipt requested, to the *pro se* plaintiff at his last known address as reflected on the docket sheet, and to any counsel of record, as applicable.

ENTER: 7 November 2013

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE