FILED

MAY 01 2015

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ARNOLD JEFFREY SAYLES,
    Plaintiff,

v.                                              Civil Action No. 5:13-cv-1

MR. TERRY O'BRIEN, Warden;
MR. T. BAYLESS, Correctional Officer;
MR. R. SHANNON, Correctional Officer,
    Defendants.

## REPORT AND RECOMMENDATION

On January 4, 2013, *pro se* Plaintiff Arnold Jeffrey Sayles ("Plaintiff") filed a Complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1] (Docket No. 1.) That same day, the Clerk mailed a Notice of Deficient Pleading, instructing Plaintiff to either file a motion to proceed *in forma pauperis* or pay the $350.00 filing fee, and also complete and submit his Complaint on the Court-approved form. (Docket No. 4.) Plaintiff paid the filing fee and filed his Court-approved form on February 19, 2013. (Docket Nos. 9 and 10.) The undersigned conducted a preliminary review and directed that the Clerk issue summonses for the Defendants and forward those to Plaintiff to effect service of process. (Docket No. 13.)

On June 26, 2013, Defendants filed a motion to dismiss and memorandum in support. (Docket Nos. 20 and 21.) Specifically, Defendants asserted that Plaintiff's Complaint should be dismissed for insufficient service of process and because Plaintiff had failed to exhaust his administrative remedies. (Docket No. 21 at 5-11.) Plaintiff filed his response on July 15, 2013. (Docket No. 25.) On November 8, 2013, the undersigned entered a Report and Recommendation

---

[1] Plaintiff marked that he was filing his Complaint pursuant to 42 U.S.C. § 1983. However, because Plaintiff is a federal prisoner, his Complaint is properly brought pursuant to Bivens.

(R&R), recommending that Defendants' motion to dismiss be denied. (Docket No. 26.) The undersigned found that while Plaintiff did not properly serve the individual defendants, the Order regarding preliminary review and service of process failed to direct the Clerk to issue summonses for the United States Attorney and the Attorney General. (Id. at 3-4.) The undersigned further found that a genuine issue of material fact existed as to whether Plaintiff properly exhausted his administrative remedies. (Id. at 7.) On December 5, 2013, United States District Judge Frederick P. Stamp, Jr. entered a Memorandum Opinion and Order affirming and adopting the R&R and denying Defendants' motion to dismiss. (Docket No. 29.)

Defendants filed an Answer to the Complaint on March 11, 2014. (Docket No. 35.) On May 9, 2014, the undersigned entered a First Order and Notice Regarding Discovery and Scheduling, directing that discovery be completed within 120 days of the Order and that dispositive motions be filed within 150 days of the Order. (Docket No. 38.) Plaintiff moved for a continuance on September 3, 2014 (Docket No. 50), and on September 9, 2014, the undersigned entered an Order amending the scheduling order to provide that all discovery be served and completed within 120 days of the date of the Order (Docket No. 51). On January 9, 2015, Plaintiff filed what he called an "Omnibus Motion Proferring Multiple Conditions of Discovery in this Matter for Judgment." (Docket No. 53.) Defendants filed their response to that motion on February 6, 2015. (Docket No. 54.) Also on that day, Defendants filed a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment." (Docket No. 55.) Plaintiff filed his response, entitled "Motion in Speechless Opposition to Defendants' Pure Subterfuge," on February 17, 2015. (Docket No. 56.) This matter is now ripe for decision and is before the undersigned pursuant to Local Rule of Prisoner Litigation Procedure 2.

## I. Contentions of the Parties

### A. *Plaintiff's Complaint*

In his Complaint, Plaintiff asserts that Defendants violated his Eighth and Fourteenth Amendment rights because their "blatant misconduct cost [him] loss of one of his fingers." (Docket No. 10 at 7.) According to Plaintiff, in April 2012, while working in his job at the Power House in the camp at USP Hazelton, he and another inmate were instructed to remove a manhole cover from a pit. (Docket No. 10-1 at 3-5.) When Plaintiff attempted to lift up the cover, the crowbar slipped, causing the cover to fall on Plaintiff's finger. (Id. at 5.) He claims that a portion of his finger was severed "while he was working with improper equipment in inappropriate weather conditions." (Docket No. 10 at 9.) As relief, he asks for damages, injunctive relief, and punitive damages. (Id.)

### B. *Defendants' Motion to Dismiss or for Summary Judgment*

In support of their motion, Defendants raise the following arguments:

1. Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies regarding the injury to his finger;

2. Plaintiff fails to allege an Eighth Amendment claim, and his Complaint is further subject to dismissal because his exclusive remedy for the injury alleged herein is the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126 (1988), 28 C.F.R. §§ 301.101-301.319; and

3. Plaintiff's Complaint should be dismissed because Defendants are entitled to qualified immunity.

(Docket No. 55-1 at 3-7.)

### C. *Plaintiff's Response*

In response, Plaintiff states that "no cause of action need arise out of an immoral or illegal act of cruelty." (Docket No. 56 at 3.) He further argues that the IACA is not an exclusive remedy for his alleged injury because it is not "comprehensive enough." (Id. at 5-6.)

3

## II. Standards of Review

*A.    Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft

Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court, which has held that a "claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. *Motion for Summary Judgment*

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving

party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

*A.   Plaintiff's Complaint*

#### 1.   Exhaustion of Administrative Remedies

A Bivens action, like an action under 42 U.S.C. § 1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action with respect to prison conditions under Bivens, § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion as provided in § 1997e(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes,"[2] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to filing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons ("BOP") provides a four-step administrative remedy process beginning with attempted resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9) within twenty (20) calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within twenty (20) calendar days of the warden's response. Finally, if the prisoner has not received any satisfaction, he may appeal to the Office of the General Counsel (BP-11) within thirty (30) calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

---

[2] Porter, 534 U.S. at 524.

Plaintiff has attached to his Complaint a form entitled "Request for Administrative Remedy Informal Resolution Form," in which he notes that he lost a portion of his finger when working at the Power House. (Docket No. 10-1 at 3.) The form is not signed by Plaintiff or any staff members at USP Hazelton, and Part C, the section where the outcome is detailed, is blank. Plaintiff has also attached a completed "Request for Administrative Remedy" form, which also details the injury to his finger. (Docket No. 10-1 at 4.) In that, he states that he "filed an informal request via an 8 ½ 'cop out' but received no response." (Id.) Part B of this form, the section where a response is written, is blank and unsigned. Plaintiff also has attached documents showing that he filed a BP-10 with the Regional Office; however, his submission was rejected because he failed to show that he had filed a BP-9. (Id. at 8-11.)

The Government has attached to its motion a declaration from Andrew Braughman, a correctional counselor assigned to Plaintiff at FCC Hazelton. As such, Mr. Braughman has access to Plaintiff's central file. (Docket No. 55-2 at 1.) While it is not necessary for inmates to submit an informal request prior to filing a BP-9, copies of such informal requests are typically kept in an inmate's central file. (Id.) Mr. Braughman reviewed Plaintiff's central file and did not find any informal requests regarding an injury to his finger. (Id. at 2.)

The Government also attached a declaration from Rachel Thompson, the Executive Assistant at FCC Hazelton. Ms. Thompson serves as the Administrative Remedy Program Coordinator at FCC Hazelton. (Docket No. 55-3 at 1.) She is responsible for, *inter alia*, "ensuring the accuracy of SENTRY entries." (Id. at 2.) Ms. Thompson states that "[a]ll administrative remedy submissions are received, coded, and entered into the SENTRY computerized Administrative Remedy System under the supervision of the Warden's Office." (Id.) All remedies, even if rejected, are assigned a

Remedy ID number. (Id.) Ms. Thompson notes that if there is no record of an administrative remedy submission in SENTRY, "the remedy request was not received by the Warden's Office." (Id. at 2-3.) For an inmate to appeal to the Regional Office, the inmate "must provide a copy of the Warden's Response along with his BP-10 submission to the Regional Office." (Id. at 3.)

The Government also relies on a declaration from Howard Williams, which was attached to its memorandum in support of its first motion to dismiss. Mr. Williams is a Paralegal Specialist at the BOP's Mid-Atlantic Regional Office. (Docket No. 21-1 at 1.) As an Administrative Remedy Clerk, he is familiar with "the processing of inmate administrative remedies." (Id.) On October 4, 2012, Plaintiff filed a remedy, complaining of a work injury in which he lost a finger, at the Regional Office. (Id. at 3.) His submission was rejected because he failed to file at the institutional level and include the Warden's response with his submission. (Id.) On November 16, 2012, Plaintiff filed another remedy complaining of a work-related injury at the Central Office. (Id.) It was rejected because it was submitted to the wrong level and failed to include both the Warden's and Regional Office's responses. (Id.) On February 1, 2013, Plaintiff filed another remedy complaining of a work-related injury that caused him to lose a finger at the Regional Office. (Id.) That submission was rejected because Plaintiff failed to include his BP-9 as well as the Warden's response. (Id.)

In his response, Plaintiff appears to only assert that Defendants should not be permitted to rely again on an argument that he failed to exhaust administrative remedies. In his response to Defendants' first motion to dismiss, Plaintiff claimed that he had placed a BP-9 in the institution mail on July 31, 2012, but never received a response from the Warden. After that, he filed a BP-10 at the Regional Office, stating that the Warden had failed to response. (Docket No. 25 at 11.) However, other than his claim and the partially completed BP-9 attached to his Complaint, there is

9

no evidence that he actually did submit a BP-9. Rather, the record reflects that Plaintiff never submitted both an informal request and a BP-9 regarding the injury to his finger. Although Plaintiff has submitted copies of what he alleges were his informal request and BP-9, the fact that Plaintiff has not provided the Court with the replies to such requests leads the undersigned to believe that such requests were never actually submitted. Given this, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as to his claim against Defendant. Nevertheless, even if the Court were to find that Plaintiff had exhausted his administrative remedies, dismissal of Plaintiff's Complaint would still be appropriate.

### B. *Eighth Amendment Claim of Deliberate Indifference*

The IACA provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). A "work related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980) (per curiam).

While the Supreme Court has held that federal prisoners cannot recover under the Federal Tort Claims Act for work-related injuries because the IACA provides the exclusive remedy for such injuries, United States v. Demko, 385 U.S. 149, 152 (1966), the Fourth Circuit has not yet determined whether the IACA bars Bivens actions brought by inmates when injuries result from work-related accidents, see Yorkey v. Pettiford, C.A. No. 8:07-1037-HMH-BHH, 2007 WL 2750068, at *5 (D.S.C. Sept. 20, 2007); see also Culbreath v. Spears, No. 1:07-cv-113, 2009 WL

2424974, at *4 (N.D. W. Va. Aug. 5, 2009); Ezebuihe v. U.S. Dep't of Justice, No. 5:07-cv-75, 2008 WL 3850739, at *5 (N.D. W. Va. Aug. 15, 2008). However, there is a split of authority among the circuits on this issue. Compare Springer v. United States, 229 F.3d 1154 (6th Cir. 2000) (IACA barred FTCA and Bivens claims which arose from injuries incurred while performing prison job); Alvarez v. Gonzales, 155 F. App'x 393, 396 (9th Cir. 2005) (barring a Bivens claim where the injury is work related); with Vacarro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996) (IACA does not bar Bivens claims); Bagola v. Kindt, 39 F.3d 779, 780 (7th Cir. 1994); Garcia-Comacho v. Maldonado, 243 F. App'x 880 (5th Cir. 2007) (remanding Bivens claim involving a work-related injury). Within this district, an inmate has been allowed to maintain a Bivens action when the injury was work-related. See Dabney v. Bledsoe, No. Civ. A. 1:03-CV-193, 2006 WL 1376903 (N.D. W. Va. May 17, 2006). However, even if this Court were to determine that the IACA does not bar a Bivens claim, it is clear that Plaintiff's Complaint does not state a claim upon which relief can be granted.

Because constitutional protections are not triggered by the "mere failure to take reasonable care," negligent deprivations are not actionable under Bivens. Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995); see also Daniels v. Williams, 474 U.S. 327, 330-31 (1986). To succeed on an Eighth Amendment claim of deliberate indifference, an inmate must show that a prison official knew of and disregarded an excessive risk to inmate safety or health. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prisoner must show that the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that the official drew such inference. Id. Deliberate indifference requires "more than ordinary lack of due care for the [plaintiff's] interest or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). When an inmate brings a claim based on a work-related injury,

11

it is not the injury itself that gives rise to a Bivens claim. Rather, in such cases the court must determine whether prison officials acted or failed to act with a sufficiently culpable state of mind, in order to determine whether a prisoner's injury was the result of punishment or a tragic accident.

Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997); see also Ruefly v. Landon, 825 F.2d 792, 793 (the crucial issue is whether an inmate has alleged that an official "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm").

In the administrative remedy forms attached to Plaintiff's Court-approved Complaint, he refers to the "negligence" and "carelessness" of two correctional officers. (Docket No. 10-1 at 1, 4, 8.) In his original Complaint, he mentioned that the injury was caused by "another person's negligence"; by "neglectful correctional officers"; by "carelessness"; and by "sheer negligence." (Docket No. 1 at 10, 12, 19.) While Plaintiff does refer to deliberate indifference, the undersigned finds that "[d]espite this legal 'jargon,' [Plaintiff] clearly raises a negligence claim, not a claim of deliberate indifference." Culbreath, 2009 WL 2424974, at *4. As the Fourth Circuit has stated:

> To be sure, the original complaint throws in word and phrases such as 'deliberate indifference,' 'malicious,' 'outrageous,' and 'wanton' when describing the conduct of the officers. The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference.

Young v. City of Mt. Rainier, 238 F.3d 567, 577 (4th Cir. 2001).

There is no dispute that Plaintiff's injury occurred while he was performing duties as part of his job in the Power House. In his memorandum attached to his original Complaint, Plaintiff states that prior to the incident, he and other inmates, while supervised by Defendants Bayles and Shannon, were successful in using a crowbar and a piece of wood to lift a manhole cover after "seven or eight aggressive attempts." (Docket No. 1 at 16.) Subsequently, Plaintiff admits that when the incident

12

occurred he "spontaneously tried to slip his hands in between to lift the cover, mostly in frustration." (Id. at 19.) From such admissions, it is clear that Defendants did not act with deliberate indifference, and that Plaintiff's Bivens claim, to the extent he intended to raise one, should be dismissed for failure to state a claim upon which relief can be granted.

### B.     *Plaintiff's Omnibus Discovery Motion*

On January 9, 2015, Plaintiff filed his "Omnibus Motion Proffering Multiple Conditions of Discovery in this Matter for Judgment." (Docket No. 53.) In his motion, he requests that counsel be appointed. (Id. at 11.) He also requests that Defendants be ordered to answer his First Request for Production of Documents, Request for Admissions, and Interrogatories. (Id.; Docket Nos. 53-1, 53-2.)

The Court has previously denied two (2) motions for appointed counsel filed by Plaintiff. (Docket Nos. 47 and 51.) The undersigned has already found that Plaintiff's Complaint is without merit; accordingly, Plaintiff has not made a showing of a particular need or exceptional circumstances warranting the appointment of counsel. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Therefore, his request for counsel should again be denied.

As to Plaintiff's discovery requests, on September 9, 2014, the undersigned amended the scheduling order to require discovery to be fully served and completed within 120 days of the date of the Order. (Docket No. 51.) Accordingly, discovery was to have been completed by January 7, 2015. As the undersigned noted, "'[c]ompleted discovery as used in Fed. R. Civ. P. 16(b) means that all discovery, objections, motions to compel and all other motions and replies relating to discovery in this civil case must be filed in time for the parties objecting or responding to have the opportunity under the Federal Rules of Civil Procedure to make responses." (Docket No. 51 at 2.) Plaintiff

13

placed his omnibus motion in the prison system for mailing on January 6, 2015, one (1) day before discovery was to have been completed. (Docket No. 53 at 12.) Accordingly, "there was no possibility that [Defendants] could file [their] response[s and make objections] within the time for completion of discovery." Braden v. Chesapeake Appalachia, LLC, No. 5:13-cv-107, 2014 WL 5305970, at *2 (N.D. W. Va. Oct. 15, 2014) (alterations in original). Accordingly, Plaintiff's motion was clearly untimely filed and should be denied.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's "Renewed Motion to Dismiss or, In the Alternative, for Summary Judgment" (Docket No. 55) be **GRANTED**; that Plaintiff's "Omnibus Motion Proferring Multiple Conditions of Discovery in this Matter for Judgment" (Docket No. 53) be **DENIED**; and that Plaintiff's Complaint (Docket No. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to all counsel of record via electronic means and to mail a copy of this Report and Recommendation

to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: May / , 2015

                                                  JOHN S. KAULL
                                                  UNITED STATES MAGISTRATE JUDGE